# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued November 15, 2011            Decided July 24, 2012

No. 10-5434

UTAHAMERICAN ENERGY, INC.,
APPELLEE

v.

DEPARTMENT OF LABOR,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:08-cv-01791)

———

*Marina Utgoff Braswell*, Assistant U.S. Attorney, argued the cause for appellant. With her on the briefs were *Ronald C. Machen Jr.*, U.S. Attorney, and *R. Craig Lawrence*, Assistant U.S. Attorney.

*J. Michael Klise* argued the cause for appellee. With him on the brief was *Thomas C. Means*.

Before: TATEL and GARLAND, *Circuit Judges*, and GINSBURG, *Senior Circuit Judge*.

Opinion for the Court filed PER CURIAM.

PER CURIAM:   UtahAmerican Energy brought this action against the Department of Labor under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, seeking documents related to government investigations of a collapse at one of its mines.  The Department invoked a number of FOIA exemptions, some of which UtahAmerican did not contest.  The district court granted summary judgment for the Department on the uncontested exemptions, but it ruled in favor of UtahAmerican on the disputed exemptions and ordered it to produce documents covered by those exemptions.   The court also ordered the Department to produce documents that were the subject of an earlier-filed FOIA suit that was pending before another district court.

The Department appealed, asserting that the district court erred in rejecting its defenses under, inter alia, FOIA Exemption 7(A), and in ordering the release of the documents at issue in the other litigation.   During the pendency of this appeal, the Department's defense under Exemption 7(A) has become moot because its basis for asserting that exemption has disappeared, thus requiring it to produce many of the contested documents that were protected by 7(A) alone.  It has also become apparent that most of the remaining documents are independently protected by another exemption, Exemption 7(C), that the district court ruled was applicable to this case.   Finally, we conclude that the court should have left disposition of the balance of the remaining documents to the court hearing the earlier-filed suit.

I

In August 2007, a collapse at the Crandall Canyon Mine in Utah trapped and eventually killed six miners.  In the days that

followed, three rescue workers were killed in a subsequent collapse as they attempted to reach the victims. The Department of Labor (DOL) conducted two separate inquiries following the incident: the Mine Safety and Health Administration (MSHA), a component agency of DOL, undertook an investigation to determine the causes of the collapse and to ascertain whether any laws or regulations had been violated; and DOL set up an Independent Review Team (IRT) to investigate MSHA's own conduct in the events leading up to and following the collapse. Both investigations resulted in published reports now available to the public. The MSHA report recommended various regulatory sanctions against the mine's owners and operators, and the U.S. Attorney for the District of Utah opened a criminal investigation into the matter.

UtahAmerican Energy owns the Crandall Canyon Mine through a subsidiary. In September 2007, it filed a FOIA request with MSHA, seeking all documents related to the Crandall Canyon Mine. MSHA provided a partial response that included some requested material and asserted various statutory exemptions regarding other documents and records. MSHA also asserted, however, that because of the broad scope of UtahAmerican's request, it had not had time to complete a search for all responsive material. On October 17, 2008, UtahAmerican filed a FOIA suit to compel MSHA to complete the search and to produce responsive material, *see* Compl., *UtahAmerican Energy, Inc. v. Mine Safety & Health Admin.*, No. 08-01780 (D.D.C. Oct. 17, 2008). Those proceedings remain ongoing.

Previously, in August 2008, UtahAmerican had filed a separate FOIA request with the Department of Labor, MSHA's parent agency. That request, in relevant part, sought transcripts of all interviews conducted by the IRT, as well as all other materials referenced in the IRT's final report. On October 20,

2008 -- three days after it brought its first lawsuit against MSHA -- UtahAmerican brought the instant suit against the Labor Department to compel production of those and other requested documents. Soon thereafter, the Department responded with a *Vaughn* index indicating that it was withholding the IRT interview transcripts in full pursuant to, inter alia, FOIA Exemptions 5, 7(A), and 7(C). J.A. 97-158; *see* 5 U.S.C. § 552(b)(5) (exempting records that would not be "available by law to a party . . . in litigation with the agency"), (7)(A) (exempting law enforcement records, the production of which "could reasonably be expected to interfere with enforcement proceedings"), (7)(C) (exempting law enforcement records, the production of which "could reasonably be expected to constitute an unwarranted invasion of personal privacy"); *Vaughn v. Rosen*, 484 F.2d 820, 826-28 (D.C. Cir. 1973). The Department noted, however, that it had not searched for material that was already the subject of UtahAmerican's earlier request to MSHA. This included "transcripts of the interviews conducted by . . . MSHA's investigation team." *UtahAmerican Energy, Inc. v. Dep't of Labor*, 700 F. Supp. 2d 99, 105 (D.D.C. 2010); *see* Decl. of George M. Fesak ¶¶ 9-10 (J.A. 43-45). The parties filed cross motions for summary judgment, with UtahAmerican opposing the Department's withholding of both the IRT and MSHA interview transcripts.

The district court found that neither Exemption 5 nor Exemption 7(A) supported withholding the IRT transcripts, *UtahAmerican*, 700 F. Supp. 2d at 106-10, and it therefore held that the Labor Department was required to "disclose the IRT interview material it has withheld under Exemptions 5 and 7(A)," *id.* at 110. But the Department had also invoked other FOIA exemptions that the court found UtahAmerican did not dispute. *Id.* at 106-07 & n.6. One of these was Exemption 7(C). *Id.* at 104. Accordingly, the court held that the Department was "entitled to withhold information under FOIA

Exemption[] . . . 7(C)," and it granted the Department's motion for summary judgment as to that defense. *Id.* at 110. Here is the confusing part, which we address more fully below: the Department asserted that some of the IRT transcripts were covered by Exemptions 5, 7(A), *and* 7(C) -- so it is unclear whether the court actually ordered that those transcripts be disclosed.

As to the MSHA transcripts, the court initially agreed with the Department that it should not resolve the applicability of FOIA to those documents because litigation regarding them was currently pending before a different district judge. *UtahAmerican*, 700 F. Supp. 2d at 103 n.2, 106 n.5. Seven months later, however, the court changed course, finding "[u]pon further reflection" that "the issue of whether DOL fulfilled its obligations under FOIA is properly before this court and is distinct from MSHA's own obligations." Reconsideration Order at 2 & n.1, No. 08-1791 (D.D.C. Nov. 2, 2010). Without resolving the merits of any of the Department's specific exemption claims, the court held that DOL had essentially defaulted by not providing a *Vaughn* index explaining its reasons for withholding the MSHA transcripts. Finding DOL's explanation -- that the materials were the subject of another FOIA suit before another judge -- to be inadequate, the court ordered production of the MSHA transcripts.

DOL filed a timely notice of appeal with respect to both the IRT and MSHA transcripts. As to the IRT transcripts, the Department contended that the district court erred in finding that they were not protected from disclosure by Exemption 5 or Exemption 7(A); it also notes that the court found some of them to be covered by Exemption 7(C). As to the MSHA transcripts, the Department argues that the court abused its discretion by addressing a matter pending before another judge, and then ordering that the Department disclose the transcripts without

permitting it to argue that they were covered by various exemptions.[1] We discuss the IRT transcripts in Part II and the MSHA transcripts in Part III.

II

The Department of Labor invoked FOIA Exemption 7(A) as grounds for withholding the entirety of the transcripts of the testimony of all 59 witnesses interviewed by the IRT. For 47 out of the 59 witnesses, Exemption 7(A) was the *only* exemption invoked as grounds for withholding the transcripts in full. (Other exemptions were invoked for withholding specific portions of those transcripts.) Exemption 7(A) authorizes agencies to withhold records "compiled for law enforcement purposes" if release of such records "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). In support of its claim to Exemption 7(A) protection, the Department argued that release of the IRT transcripts would interfere with the U.S. Attorney's criminal investigation of the collapse at the Crandall Canyon Mine, as well as with ongoing civil enforcement proceedings. The district court rejected this argument, holding that Exemption 7(A) did not protect the transcripts from disclosure.

Some time after the oral argument in this appeal, UtahAmerican's subsidiary reached a plea agreement with the government regarding violations of federal mine safety laws at Crandall Canyon. Thereafter, the Labor Department advised us that "Exemption 7(A) is no longer needed to protect any civil or criminal investigation," and it moved to dismiss that portion of

---

[1]The Department argues that the MSHA transcripts are in fact subject to several FOIA exemptions. Because we agree that the issue was not properly before the district court, we do not consider whether those exemptions apply.

its appeal. DOL Mot. at 4 (Apr. 19, 2012). UtahAmerican did not oppose the motion to dismiss. UtahAmerican Resp. at 1 (Apr. 20, 2012). Accordingly, the appeal is moot with respect to the application of Exemption 7(A), and we will vacate that part of the district court's decision. *See Humane Soc'y of U.S. v. Kempthorne*, 527 F.3d 181, 184-85 (D.C. Cir. 2008); *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39 (1950). The IRT transcripts of the testimony of the 47 witnesses as to which the Department invoked no other exemption must now be produced -- except to the extent that any partial redactions are supported by other FOIA exemptions that were upheld by the district court and not litigated on this appeal.[2]

That leaves still to be considered the IRT transcripts of the 12 remaining witnesses. *See* DOL Mot. at 4-5.[3] We directed the parties to address those documents by post-argument submissions. *See* Order (Apr. 27, 2012). In their submissions, the Labor Department asserts -- and UtahAmerican disputes -- that the transcripts of the 12 witnesses' testimony are protected by FOIA Exemption 5, which allows agencies to withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency," 5 U.S.C. § 552(b)(5). *See* DOL Resp. at 4 (May 4, 2012); UtahAmerican Resp. at 3 (May 9, 2012); *see also* Fesak Decl. ¶¶ 26-27 (J.A. 53-54). The Department's Exemption 5 argument is based on an "accident

---

[2]In the district court, DOL invoked Exemptions 6 and 7(C) as grounds for redacting portions of the transcripts. Because the court granted summary judgment in favor of the Department with respect to those exemptions, *see UtahAmerican*, 700 F. Supp. 2d at 106-07, they continue to apply.

[3]There are a total of 14 such transcripts; two witnesses were interviewed twice.

investigation privilege" that this court has recognized in certain instances. *See Machin v. Zuckert*, 316 F.2d 336, 339 (D.C. Cir. 1963); *United States v. Weber Aircraft Corp.*, 465 U.S. 792, 799 (1984).

We need not decide whether Exemption 5 extends to the transcripts of the 12 remaining witnesses. As the Labor Department points out, it appears that the district court granted summary judgment in its favor as to another exemption for records compiled for law enforcement purposes, FOIA Exemption 7(C), a ruling that UtahAmerican has not appealed. *See* DOL Resp. at 3 (May 4, 2012); Oral Arg. Recording at 9:08-:32.[4] There is no doubt that in the district court the Department claimed Exemption 7(C) protection for the entirety of the transcripts of the 12 witnesses. *See* Fesak Decl. ¶¶ 26-27, 38 (J.A. 53-54, 59-60) (declaring that the same IRT transcripts are covered in their entirety by Exemptions 5 and 7(C)); *Vaughn* Index at 12-59 (J.A. 108-55). And there is likewise no doubt that the district court granted summary judgment in favor of the Department on its Exemption 7(C) defenses. *UtahAmerican*, 700 F. Supp. 2d at 110.

The confusing part is that, although the court ruled that the Department of Labor was "entitled to withhold information under FOIA Exemption[] . . . 7(C)," it also ruled that the Department must "disclose the IRT interview material it has withheld under Exemptions 5 and 7(A)." *Id.* Because the transcripts of the 12 witnesses are in the crosshairs of *both*

---

[4]Unlike 7(A), Exemption 7(C) does not require a showing that production of the law enforcement records could reasonably be expected to interfere with enforcement proceedings. Instead, Exemption 7(C) protects against production that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).

rulings, it is unclear whether the court actually intended to order the Department to disclose them.  UtahAmerican maintains that the court did so intend.  *See* UtahAmerican Resp. at 4 (May 9, 2012).  But if that were what the court intended, it would appear the court acted without warrant:  the government, after all, "need prevail on only one exemption." *ACLU v. Dep't of Defense*, 628 F.3d 612, 623 n.3 (D.C. Cir. 2011).

Accordingly, we reverse the judgment of the district court insofar as it may be construed as directing the Labor Department to disclose the IRT transcripts that are protected by Exemption 7(C).  On remand, the court may clarify its order.  If the court did not intend to order disclosure of those transcripts, that will be the end of the matter.  However, if the court did intend to order disclosure, and if it renews that order, then it must explain why the order is consistent with the court's grant of summary judgment regarding Exemption 7(C).   In that event, the Department will be free to appeal again on the grounds of both Exemption 5 and Exemption 7(C).

## III

We next address the district court's order to disclose the MSHA transcripts.  The documents at issue are transcripts of interviews that MSHA conducted and then shared with the IRT. *See* Fesak Decl.  ¶ 25 (J.A. 52-53).  Those documents are also the subject of a separate FOIA suit that UtahAmerican had earlier filed against MSHA before another federal judge in the District of Columbia.  *See* Compl., *UtahAmerican*, No. 08-01780 (Oct. 17, 2008).

The district court in this case initially agreed with the Department that it should not address the MSHA transcripts because "this material is already the subject of an earlier FOIA

suit plaintiff brought against MSHA." *UtahAmerican*, 700 F. Supp. 2d at 106 n.5. The court further elaborated that:

> For reasons unknown to the Court, plaintiff declined to notice these two cases as related even though they arise from the same factual events and share common issues of fact and law, and thus appear to fall within the definition of 'related' cases under the Local Rules of Civil Procedure. . . . Notwithstanding such a failure, UtahAmerican, amazingly, invites this Court to study subtle differences between the litigation positions it took in these two separate cases because it believes those differences *may* impact the outcome of this case. . . . Judicial efficiency alone would militate against that curious request.

*Id.* at 103 n.2. Seven months later, however, the court reconsidered the issue and concluded that the status of the transcripts was properly before it, notwithstanding the other litigation. The court then held that the Department had defaulted by not providing it with a *Vaughn* index that explained the reasons for withholding the MSHA transcripts. Without resolving the merits of the Department's specific exemption defenses, the court ordered production of the MSHA transcripts. Reconsideration Order at 2-3 & n.3 (J.A. 533-34).

The district court was right in staying its hand the first time. We are, of course, mindful that a "district court's decision [whether] to decline jurisdiction in favor of an ongoing proceeding is reviewed for abuse of discretion." *Handy v. Shaw, Bransford, Veilleux & Roth*, 325 F.3d 346, 349 (D.C. Cir. 2003). But we conclude that the court abused that discretion when it ordered the government to release the MSHA transcripts. *Cf. W. Gulf Mar. Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 730, 732 (5th Cir. 1985) (vacating an injunction when the district

court "should have stayed, dismissed, or transferred [the plaintiff's] action" because a related case was already pending in another federal court).

The usual "rule in this circuit has been that '[w]here two cases between the same parties on the same cause of action are commenced in two different Federal courts, the one which is commenced first is to be allowed to proceed to its conclusion first.'" *Wash. Metro. Area Transit Auth. v. Ragonese*, 617 F.2d 828, 830 (D.C. Cir. 1980) (quoting, inter alia, *Speed Prods. Co. v. Tinnerman Prods., Inc.*, 171 F.2d 727, 729 (D.C. Cir. 1948)); *see Consumers Union of the U.S., Inc. v. Consumer Prod. Safety Comm'n*, 590 F.2d 1209, 1218 (D.C. Cir. 1978) (acknowledging that "'[o]rdinarily, the court first acquiring jurisdiction of a controversy should be allowed to proceed with it without interference from other courts under suits subsequently instituted'" (quoting *Carbide & Carbon Chems. Corp. v. U.S. Indus. Chems., Inc.*, 140 F.2d 47, 49 (4th Cir. 1944))), *rev'd on other grounds*, 445 U.S. 375 (1980). To be sure, the decisions recognizing the first-in-time rule note that "equitable considerations" may weigh against applying it in particular cases. *Handy*, 325 F.3d at 350; *Columbia Plaza Corp. v. Sec. Nat'l Bank*, 525 F.2d 620, 627 (D.C. Cir. 1975). But no such considerations have been asserted in this case.

The reasons for the rule are manifest. As we have explained, "[c]onsiderations of comity and orderly administration of justice dictate that two courts of equal authority should not hear the same case simultaneously." *Wash. Metro.*, 617 F.2d at 830. "'Sound judicial administration counsels against separate proceedings, and the wasteful expenditure of energy and money incidental to separate litigation of identical issues should be avoided.'" *Handy*, 325 F.3d at 349 (footnotes omitted) (quoting *Columbia Plaza*, 525 F.2d at 626); *see id.* ("In the case of parallel litigation in two

federal district courts, the 'general principle is to avoid duplicative litigation.'" (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976))).

The rationale for allowing the first court to proceed to its disposition is fully applicable here: we should not expend judicial resources -- and potentially produce contradictory decisions -- by allowing the same FOIA plaintiff multiple bites at the apple. *See Beck v. Dep't of Justice*, No. 88-3433, 1991 WL 519827, at *5 (D.D.C. Jan. 31, 1991) (declining to rule on a FOIA request for certain documents because those documents overlapped with documents sought in a suit filed in another court, and "a decision not to defer jurisdiction to [that court] would require preparation of duplicate summary judgment motions arguing the propriety of the exemptions [the government] has asserted and duplicate consideration of those motions"). UtahAmerican is litigating against both a component (MSHA) and its parent agency (DOL), seeking orders from two different judges directing the production of the same documents. Were both claims to proceed, the respective district courts would be required to duplicate their efforts. Moreover, the twin claims could generate contradictory results that could, in turn, generate dueling appeals. Indeed, at oral argument, counsel for UtahAmerican conceded that if the other district court were to determine that the MSHA transcripts were covered by a particular exemption, UtahAmerican would "be back up here before you again, sitting at a different table." Oral Arg. Recording at 31:00-:25.

The problem we have identified is particularly acute in FOIA cases, where multiple components of the same agency may withhold the same documents on the same grounds, thus potentially generating multiple lawsuits and appeals raising the same issues. We see no reason to permit FOIA litigation to proceed down that path. Nor do we see any reason to permit one

court to preempt another in the same district from resolving an issue that was first raised in the other's courtroom. We will therefore reverse the judgment with respect to the MSHA transcripts.

## IV

For the foregoing reasons, we reach the following disposition: First, we dismiss as moot those portions of the appeal that relate to Exemption 7(A), and vacate those parts of the district court's decision that address that exemption. The Department of Labor must now produce the IRT transcripts of the 47 witnesses as to which it invoked no exemption other than 7(A), except to the extent that any partial redactions are supported by other FOIA exemptions that were upheld by the district court and not litigated on this appeal. Second, we reverse the judgment of the district court insofar as it may be construed to direct the Department to disclose the IRT transcripts of the remaining 12 witnesses that are protected by Exemption 7(C). Third, we reverse the district court's judgment with respect to the MSHA transcripts. Finally, we remand the case to the district court for further proceedings consistent with this opinion.

*So ordered.*